UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO MONTIJO, JR., et al., | No. 1:20-cv-00125-DAD-EPG |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND |
| STEVEN R. HRDLICKA, | |
| Defendant. | (Doc. No. 10) |

This matter is before the court on the motion to dismiss filed by defendant Steven R. Hrdlicka on May 18, 2020. (Doc. No. 10.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant's motion was taken under submission on the papers. (Doc. No. 11.) For the reasons explained below, the court will grant the pending motion to dismiss.

**BACKGROUND**

On January 22, 2020, plaintiffs Alejandro Montijo, Jr. and Joseph Banuelos, Jr. ("plaintiffs") filed a complaint initiating this action in which they allege that defendant attempted to "unlawfully and abusively collect a debt allegedly owed by plaintiffs pursuant to a residential lease agreement" in violation of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.* (Doc. No. 1 at ¶¶ 4–5.)

In their complaint, plaintiffs allege as follows. Plaintiffs are former tenants of an apartment owned and managed by Conam Management Corporation ("Conam") in Fresno, California. (*Id.* at ¶ 18.) Defendant Hrdlicka is an attorney licensed to practice law in California and "is the sole proprietor of the Law Offices of Steven R. Hrdlicka, a for profit law firm specializing in prosecuting [unlawful detainer] cases and collecting debts on behalf of third-party creditors." (*Id.* at ¶¶ 14–15.) "Defendant operates the most prolific full-service eviction and debt collection practice in the Central Valley," and between 2007 and 2016, "[d]efendant filed and prosecuted 10,099 [unlawful detainer] cases against Fresno County tenants on behalf of landlord-creditors" in the Fresno County Superior Court. (*Id.* at ¶ 6.)

On August 31, 2018, defendant filed a verified unlawful detainer complaint against plaintiffs in the Fresno County Superior Court on behalf of his client, Conam, and continued to represent Conam throughout the unlawful detainer proceedings.[1] (*Id.* at ¶¶ 19–20.) As Conam alleged in that complaint, plaintiffs were served with a three-day notice to perform covenants or

---

[1] Plaintiffs did not attach a copy of that unlawful detainer complaint as an exhibit to their complaint filed in this action. However, in connection with their opposition to the pending motion, plaintiffs filed a request for judicial notice of the unlawful detainer complaint and the residential lease agreement attached thereto, because those documents are incorporated by reference in their complaint. (Doc. No. 13.) In his reply, defendant notes that the unlawful detainer complaint had three attached exhibits (the lease agreement, the three-day notice to perform or quit, and the proof of service of that three-day notice), and thus the version of the complaint plaintiffs have provided to the court with only the lease agreement attached to it was incomplete. (Doc. No. 15 at 5, n.1.) Accordingly, defendant filed a request for judicial notice of the unlawful detainer complaint as it was filed, complete with its three attached exhibits. (Doc. No. 15-1.) In ruling on a motion to dismiss, courts may consider documents outside the pleadings if those documents are attached to the complaint, incorporated by reference in the complaint, or are matters of which judicial notice is taken. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). A federal court may take judicial notice of documents filed in related state court actions. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of proceedings in other courts where those proceedings have a "direct relation to matters at issue"). Here, because the unlawful detainer complaint and its attached exhibits are incorporated by reference in plaintiffs' complaint filed in this action and are also properly the subject of judicial notice as filings in a related state court action, the court will grant the parties' respective requests and take judicial notice of the unlawful detainer complaint and all of its attached exhibits.

quit based on an alleged breach of the "maintenance/bed bug addendum," in which plaintiffs allegedly failed to maintain and clean the apartment and to prepare it for inspection and treatment by pest control for bed bugs. (Doc. No. 15-1 at 7, 18.) Conam requested the following relief in state court: possession of the premises, costs incurred in the proceedings, reasonable attorneys' fees, forfeiture of the lease agreement, and damages in the amount of the fair rental value of the premises of $12.90 per day for each day that plaintiffs remained in possession from September 1, 2018 through the entry of judgment (i.e., holdover damages). (*Id.* at 8.) Conam's unlawful detainer action was based upon plaintiffs' alleged failure to perform covenants—not any failure to pay rent; Conam did not allege that plaintiffs had failed to pay rent or request any amounts for past due rent as relief. (*Id.* at 7–8.)

Plaintiffs timely filed an answer to that unlawful detainer complaint, and a trial on the merits took place on October 9, 2018. (*Id.* at ¶¶ 19–20.) The issues at trial were whether Conam was entitled to possession of the premises and to holdover damages. (*Id.* at ¶ 22.) At the conclusion of the trial, the Fresno County Superior Court entered a judgment in favor of Conam for possession only; holdover damages or any other monetary relief were not awarded. (*Id.* at ¶ 23.) As ordered by the state trial court, plaintiffs vacated the premises on October 24, 2018. (*Id.* at ¶ 24.)

Plaintiffs struggled to secure new housing. (*Id.* at ¶ 25.) One prospective landlord was willing to rent to them but later refused "because their credit report showed that they owed money to a prior landlord based upon a judgment for monetary damages." (*Id.* at ¶ 26.) This was the first time that plaintiffs learned of any judgment for damages entered against them. (*Id.* at ¶ 27.)

Unbeknownst to plaintiffs at the time, defendant had appeared in the Fresno County Superior Court on January 29, 2019 to "prove-up" default judgments in seventeen cases, by reading the amount of damages into the record, presenting prepared default judgment forms to the court for signature, and filing them with the state court's clerk. (*Id.* at ¶¶ 34–36.) In default cases, the landlord's attorney files either "a request for the clerk to enter a default judgment for a writ of possession because the tenant failed to file an answer" or "a request for the judge to issue[] a default judgment for writ of possession because the tenant failed to appear for trial." (*Id.*

3

at ¶ 8.) Despite the fact that the plaintiffs had both answered the unlawful detainer complaint and appeared for trial in that action, defendant prepared a judgment form for the superior court to sign at the January 29, 2019 proceedings that falsely represented that "relief is awarded pursuant to a default entered by the court's clerk as a result of plaintiffs' failure to respond to the unlawful detained complaint." (*Id.* at ¶¶ 35, 36.) Defendant did not inform the superior court of the October 9, 2018 trial and judgment. (*Id.* at ¶ 33.) Defendant did not give any prior notice of the January 29, 2019 proceedings to plaintiffs, and the proceedings therefore occurred in plaintiffs' absence. (*Id.* at ¶ 31.) Defendant did not file a memorandum of costs or a properly noticed motion for attorneys' fees. (*Id.* at ¶ 30.) Nonetheless, the superior court "granted monetary relief based upon defendant's misrepresentation that he was simply 'proving-up' a default judgment." (*Id.* at ¶ 32.) Specifically, the default judgment entered against plaintiffs on January 29, 2019 awarded Conam $2,736.60 in monetary relief, consisting of "$696.60 in holdover damages, $1,350 in attorneys' fees, and $690.00 in court costs." (*Id.* at ¶¶ 28, 29; Doc. No. 10-1 at 10.) According to plaintiffs, "defendant took advantage of his position as an officer of the court" and "falsely represented the amount and legal status of the alleged debt and proceeded in a way patently prohibited by law in order to secure a judgment for amounts not authorized by law." (Doc. No. 1 at ¶ 9.)

Plaintiffs filed a motion in the superior court to vacate the January 29, 2019 default judgment, which defendant did not oppose and which the superior court granted on June 6, 2019.[2]

---

[2] Plaintiffs did not attach the superior court's order granting their motion to vacate the default judgment as an exhibit to their complaint. However, in connection with his pending motion to dismiss, defendant filed a request for judicial notice in which he asks the court to take judicial notice of the superior court's records of certain filings in the unlawful detainer action (Case No. 18CEL09077), including: (1) the October 9, 2018 judgment in favor of Conam after trial; (2) the default judgment entered on January 29, 2019; (3) the minute order dated October 24, 2019 denying plaintiffs' motion for sanctions and attorneys' fees; (4) the minute order dated June 6, 2019 granting plaintiffs' motion to vacate the default judgment; (5) plaintiffs' motion for sanctions and attorneys' fees; (6) plaintiffs' notice of appeal of the superior court's order denying their motion for attorneys' fees; (7) plaintiffs' notice of abandonment of their appeal. (Doc. No. 10-1 at 1–2.) As noted in footnote 1 above, documents filed in related state court actions are the proper subject of judicial notice. Accordingly, the court grants defendant's request and takes judicial notice of these superior court records. *See Phillips v. Archstone Simi Valley LLC*, No. 2:15-cv-05559-DMG-PLA, 2016 WL 400100, at *1 (C.D. Cal. Feb. 1, 2016) (taking judicial notice of documents filed in a state court unlawful detainer action because "[d]ocuments on file in federal or state courts are considered undisputed matters of public record").

(*Id.* at ¶ 37; Doc. No. 10-1 at 14.)  Plaintiffs also filed a motion for sanctions and "reasonable attorneys' fees incurred in bringing their motion to vacate a void judgment that [Conam] obtained through [defendant] Hrdlicka's frivolous actions made in bad faith," which the superior court denied on October 24, 2019.  (Doc. No. 10-1 at 12, 16.)

Plaintiffs also allege that defendant's allegedly unlawful actions had significant consequences for plaintiffs because "[t]he fraudulent judgment was reflected in their rental history and credit reports which, in turn, marked them as high-risk renters."  (*Id.* at ¶¶ 39, 40.)  Plaintiffs struggled for six months to secure a new apartment, during which their rental applications were repeatedly denied, and they spent "hundreds of dollars in gas and application fees."  (*Id.* at ¶¶ 41, 42.)  "Having their rental applications constantly rejected, having to inconvenience others, and the loss of their privacy caused plaintiffs embarrassment, fear, and anxiety," and plaintiff Banuelos "fell into a deep depression that required therapy he still needs to this day."  (*Id.* at ¶¶ 44, 45.)

As noted, plaintiffs filed their complaint in this action on January 22, 2020, alleging that defendant violated the FDCPA and the UCL and that as a proximate result of those violations, plaintiffs have suffered emotional distress damages, "damages related to injury to credit histories and credit scores, and other monetary and nonmonetary damages."  (Doc. No. 1 at 6–7.)  Defendant was served with the summons and complaint on April 17, 2020.  (Doc. No. 9.)

On May 18, 2020, defendant filed the pending motion to dismiss plaintiffs' complaint, along with a request for judicial notice.  (Doc. Nos. 10, 10-1.)  On July 7, 2020, plaintiffs filed an opposition to the pending motion to dismiss, along with a request for judicial notice.  (Doc. Nos. 13, 14.)  On July 14, 2020, defendant filed a reply thereto, along with another request for judicial notice.  (Doc. No. 15.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police*

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6), arguing that plaintiffs have failed to state a cognizable FDCPA claim and a cognizable UCL claim against him. (Doc. No. 10.)  The court will address the sufficiency of plaintiffs' allegations with respect to each of those claims in turn.

/////

/////

A.    **Plaintiffs' Fair Debt Collection Practices Act ("FDCPA") Claim**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "[T]he FDCPA should be construed liberally to effect its remedial purpose." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). For example, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including: using a "false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); using a "threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5); or using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10). In addition, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

"The FDCPA imposes liability only when an entity is attempting to collect debt." *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

To state a claim under the FDCPA, a plaintiff must allege facts to satisfy the following threshold elements: (1) that plaintiff is a consumer; (2) that plaintiff was the object of a collection activity arising from a debt; (3) that defendant is a debt collector; and (4) that defendant violated a provision of the FDCPA. *McEwen v. Benedict*, No. 3:20-cv-2364-CAB-LL, 2021 WL 1515574, at *4 (S.D. Cal. Apr. 16, 2021); *Sanchez v. Law Off. of Armo*, No. 1:20-cv-00163-NONE-SKO, 2021 WL 1214559, at *8 (E.D. Cal. Mar. 31, 2021), *report and recommendation adopted sub nom. Sanchez v. Law Off. of Lance E. Armo, et al.*, 2021 WL 2292779 (E.D. Cal. June 4, 2021); *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113 (N.D. Cal. 2014).

Here, in moving to dismiss plaintiffs' complaint, defendant does not contest that plaintiffs are "consumers," but does contend that plaintiffs have not sufficiently alleged the other threshold elements of a cognizable FDCPA claim. (Doc. No. 10 at 11.) Defendant argues that plaintiffs fail to state a cognizable FDCPA claim because: his legal practice in litigating unlawful detainer actions does not make him a "debt collector;" the damages he sought by way of default judgment does not constitute a "debt;" and his conduct in seeking holdover damages, costs, and attorneys' fees in the unlawful detainer action to recover possession of the premises only—not payment of past-due rent—is not "debt collection." (Doc. No. 10 at 11–14.) In addition, defendant argues that his conduct did not violate the FDCPA because he did not make a false, deceptive, or unfair representation *to plaintiffs* in an attempt to collect a debt; rather, he mistakenly represented *to the superior court* that default had been entered and he mistakenly sought a default judgment awarding monetary damages on that basis. (*Id.* at 14.) That mistake, defendant points out, was corrected in the superior court proceedings by that court's order vacating the default judgment. (*Id.*) Defendant essentially contends that his conduct in making that mistake "is not the type of misleading collection practices contemplated by the FDCPA," and that it cannot be that "every time an attorney makes a mistake in its litigation practices in a lawsuit seeking monetary damages, that attorney will be liable under the FDCPA." (Doc. No. 10 at 13–14.)

/////
/////
/////

In opposing the pending motion, plaintiffs counter that they have sufficiently alleged the threshold elements of their FDCPA claim.[3] (Doc. No. 14.)

### 1. Whether Defendant Hrdlicka is a "Debt Collector"

Plaintiffs argue that they have alleged that defendant is a debt collector based upon his "prolific full-service and debt collection practice," including regularly "filing eviction lawsuits for nonpayment of rent and service of notices demanding rent." (Doc. No. 14 at 11–12.) Plaintiffs suggest that "[g]iven the sheer volume and consistency of defendant's debt collection work, one can reasonably infer that he regularly collects debt owed [to] another and that he is a debt collector under the FDCPA." (*Id.* at 13.) In making this argument, plaintiffs rely on their allegations regarding defendant's prolific practice representing landlords in unlawful detainer actions generally, not his representation of Conam in the unlawful detainer action brought against them specifically, which was not based on any failure to pay rent. (*Id.* at 11–13.) Though not explicitly stated, it appears that plaintiffs presume that defendant's overall practice includes regularly evicting tenants for failing to pay rent and suing those tenants to recover past-due rent, and contend that on that basis, he is a "debt collector."

In reply, defendant does not counter plaintiffs' apparent presumption in this regard. Instead, defendant focuses on the specific nature of the unlawful detainer action brought against plaintiffs, in which Conam sought possession and holdover damages, not past due rent. (Doc. No. 15 at 5–7.) Defendant argues that "[h]e was not acting as a debt collector when he filed the unlawful detainer lawsuit" against plaintiffs to recover possession of the premises. (*Id.* at 6.) Defendant also argues that unlawful detainer actions are analogous to foreclosure proceedings, which are not attempts to collect debt under the FDCPA because the aim of foreclosure is to recover possession of property. (Doc. No. 10 at 12.) Plaintiffs do not dispute that foreclosure

/////

/////

---

[3] Because the court finds analysis of these threshold elements to be dispositive of the pending motion, the court does not address the parties' arguments with regard to collateral estoppel or application of California's litigation privilege. (Doc. Nos. 10 at 15–16, 18–21; 14 at 15–17.)

proceedings are not an attempt to collect a debt,[4] but they contend that litigating "eviction lawsuits demanding rent"—an activity that they allege defendant engages in regularly—is not analogous to foreclosure proceedings. (Doc. No. 14 at 12.)

Plaintiffs also cite to cases in which courts have found that lawyers who regularly litigate unlawful detainer actions are "debt collectors." (*Id.* at 11) (citing *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1303 (E.D. Cal. 2009) (concluding that an attorney was a debt collector where her "collections actions constitute 40 to 50 percent of her total work, which includes a client for whom she performs exclusively debt collection work as well as work for various clients on unlawful detainer actions, which all include demands for payment"); *Gonzalez v. Law Off. of Allen Robert King*, 195 F. Supp. 3d 1118, 1126–27 (C.D. Cal. 2016) (concluding that the plaintiff had sufficiently alleged that the defendant was a "debt collector" under the FDCPA where he made statements in connection with collecting plaintiff's past due rent on behalf of his creditor client and he had described himself as "a lawyer who prosecutes unlawful detainer actions" and "focuses on landlord-tenant litigation," having prosecuted "thousands of unlawful detainer cases in his 36 years in practice")). However, as defendant notes, each of the cases relied upon by plaintiffs involved unlawful detainers based on non-payment of rent. (Doc. No. 15 at 9, n.3.)

Defendant points to a few cases in which lawyers who initiated unlawful detainer actions were not deemed to be "debt collectors," but those cases involved attempts to recover possession of premises following foreclosures and contained no factual allegations about the lawyers' practice beyond that particular post-foreclosure unlawful detainer. (Doc. Nos. 10 at 12; 15 at 10, n.4) (citing *Hidalgo v. Aurora Loan Servs. LLC*, No. 3:13-cv-01341-MLH-JMA, 2013 WL

---

[4] *See McEwen*, 2021 WL 1515574, at *4 (dismissing an FDCPA claim brought against lawyer defendants because "the activity of nonjudicially foreclosing on property under a deed of trust is not the collection of a 'debt' under the FDCPA") (citing *Obduskey v. McCarthy & Holthus LLP*, ___ U.S. ___, 139 S. Ct. 1029, 1031 (2019) (holding that businesses, including law firms, that are engaged in no more than simply enforcing security interests in non-judicial foreclosure proceedings are not "debt collectors" under the FDCPA)); *see also Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 1001 (9th Cir. 2020) (affirming the district court's dismissal of an FDCPA claim where the plaintiff did not plead "conduct by the defendants beyond the filing of a foreclosure complaint and actions to effectuate that proceeding" because "[a] judicial foreclosure proceeding is not a form of debt collection when the proceeding does not include a request for a deficiency judgment or some other effort to recover the remaining debt").

4647550, at *3–4 (S.D. Cal. Aug. 29, 2013) (dismissing plaintiff's FDCPA claim against a law firm that initiated unlawful detainer following a foreclosure on her residential mortgage because "an unlawful detainer action regarding holdover occupants after foreclosure does not qualify as the collection of a debt within the meaning of the FDCPA"); *Lucore v. Zeff*, No. 3:15-cv-00910-JLS-MDD, 2018 WL 1101099, at *5 (S.D. Cal. Feb. 26, 2018), *aff'd*, 829 F. App'x 786 (9th Cir. 2020) (dismissing an FDCPA claim brought against lawyer defendants who were enforcing a security interest, not attempting to collect a debt, when they pursued an unlawful detainer action to secure property obtained at a foreclosure sale and the eviction notices they sent "did not request payment of monetary debt to their client"); *see also Brambila v. Reo Bay Area, LP*, No. 11-cv-03202-SI, 2011 WL 4031142, at *5 (N.D. Cal. Sept. 8, 2011) (dismissing an FDCPA claim because the plaintiffs did not sufficiently allege that the defendant law firm and defendant lawyers were "debt collectors" where defendants "simply commenced—and successfully litigated—an unlawful detainer action against plaintiffs with respect to possession of the premises" following foreclosure)). Unlike plaintiffs' allegations against defendant in this case, the plaintiffs in the cases relied upon by defendant had not alleged that the defendant lawyers were regularly involved in unlawful detainer actions based on failure to pay rent or that those lawyers had a robust debt collections practice.

It is well-settled that "[t]he FDCPA applies to a lawyer, and law firm, regularly engaged in consumer debt-collection litigation on behalf of a creditor client." *Gonzalez*, 195 F. Supp. 3d at 1126–27 (citing *Heintz*, 514 U.S. at 293–94 ("In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts.")). In assessing whether a lawyer "regularly" engages in debt collection activities, courts consider the "number of debt collection clients, their proportion of her total workload, and the frequency with which she engages in debt collection activities." *Riley*, 631 F. Supp. 2d at 1304.

Notably, defendant does not argue that plaintiffs' allegations regarding the breadth of his "prolific full-service eviction and debt collection practice," including "collecting debts on behalf of third-party creditors" and prosecuting over 10,000 unlawful detainer cases between 2007 and

11

2016 (Doc. No. 1 at ¶¶ 6, 15), are somehow insufficient to show that he regularly engages in debt collection activities and is, therefore, a "debt collector." Defendant also does not suggest that plaintiffs are mistaken in their allegations regarding his legal practice and specialization—factual allegations that the court must assume are true at this stage of the litigation. Although defendant emphasizes that he was not seeking payment of past-due rent or seeking to evict plaintiffs on that basis in this particular unlawful detainer action, the question of whether there was "debt collection" activity in this particular instance is a separate threshold element from the question of whether defendant is a "debt collector."

Accordingly, in light of defendant's allegedly extensive unlawful detainer and debt collection practice, the court finds that plaintiffs have sufficiently alleged that defendant is a "debt collector."

    2.    <u>Whether the Damages Sought in the Default Judgment Constituted a "Debt"</u>

Plaintiffs allege in their complaint that "[t]he debt was allegedly owed pursuant to specific provisions of a residential lease of an apartment unit that served as plaintiffs' sole residence for nearly five years and is therefore a 'debt'" under the FDCPA. (Doc. No. 1 at ¶ 48.) In their opposition to the pending motion to dismiss, plaintiffs argue that the monetary damages defendant sought in the default judgment proceedings in state court constitute "debt" under the FDCPA "because the holdover rent defendant sought to collect arose from the underlying lease agreement" and the "fees and costs were pursued under the fee provision in the lease." (*Id.* at 10.) In reply, defendant emphasizes that the underlying unlawful detainer action was based upon plaintiffs' alleged failure to perform covenants provided in the bed bugs addendum to their lease agreement—not on any failure by plaintiffs to pay rent. (Doc. No. 15 at 5–10.) That is, Conam did not allege that plaintiffs had failed to pay rent, nor did it request any amounts for past due rent as relief. (Doc. Nos. 15 at 5; 15-1 at 7–8.) Defendant explains that although the formal rental amount is used to calculate the measure of damages (the fair rental value per day), the holdover damages themselves are not rent at all, let alone "past due rent" that plaintiffs owed to Conam under the terms of their lease. (Doc. No. 15 at 8–9.) Defendant's argument in this regard is persuasive.

In making their argument, plaintiffs conflate "holdover damages" with "past-due rent." These are not the same. The judicial council forms that defendant used for the unlawful detainer complaint and the default judgment both show that "holdover damages" is a separate and distinct category of relief from "past-due rent." (*See* Doc. No. 10-1 at 10; 15-1 at 8.) Notably, in their motion to vacate the default judgment in the superior court, plaintiffs stated that "[t]he only two issues at trial were whether Conam was entitled to possession of the subject property and whether [plaintiffs] Montijo & Banuelos were obligated to pay *holdover damages*." (Doc. No. 10-1 at 38) (emphasis added). Yet, plaintiffs changed this characterization in their complaint in this action, stating that the only two issues before the superior court in the unlawful detainer trial were "whether Conam was entitled to possession of the subject property and whether plaintiffs were obligated to pay *past due rent*, i.e., holdover damages." (Doc. No. 1 at ¶ 22) (emphasis added). Neither plaintiffs' complaint filed in this action nor the underlying unlawful detainer complaint contain any allegations that plaintiffs had failed to pay rent or owed any past due rent to their landlord Conam. Thus, plaintiffs' characterization of the holdover damages as constituting a "debt" owed under their lease for past-due rent is not supported by the factual allegations of their own complaint. Moreover, plaintiffs undercut their own argument that the holdover damages reflected a debt that they owed by noting in their opposition brief that "holdover damages are not owed until that issue is tried on the merits and a judgment is subsequently rendered," which they assert did not happen in the superior court proceedings; thus, "holdover damages" were not owed and were not a debt. (Doc. No. 14 at 8, n.3.)

Accordingly, the court finds that the "holdover damages, attorneys' fees, and costs" that defendant sought by way of the default judgment proceedings in state court do not constitute "debt" under the FDCPA.

   3. <u>Whether Plaintiffs were the Object of Collection Activity Arising from a Debt</u>

Because the court finds that there was no debt, it follows that defendant's conduct in representing to the superior court that default had been entered in the unlawful detainer action against plaintiffs and seeking an award of holdover damages, attorneys' fees, and costs in the default judgment, was not an attempt by defendant to collect a "debt." *Vien-Phuong Thi Ho*, 858

13

F.3d at 571 ("The FDCPA imposes liability only when an entity is attempting to collect debt."). In other words, defendant was not engaged in debt collection activity when he made that representation to the court and obtained the default judgment award. Plaintiffs, therefore, were not the object of any debt collection activity by defendant.

Thus, although plaintiffs sufficiently alleged that defendant is a "debt collector," plaintiffs have not sufficiently alleged facts that, if proven, would show that plaintiffs were "the object of a collection activity arising from a debt," a requisite threshold element to their FDCPA claim. *See Sanchez v. Law Off. of Armo*, 2021 WL 1214559, at *8.

Accordingly, the court will grant defendant's motion to dismiss plaintiff's FDCPA claim.

**B.     Plaintiffs' Unfair Competition Law ("UCL") Claim**

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Here, plaintiffs' UCL claim is based on their allegations that defendant engaged in "unlawful" and "unfair" business practices. (Doc. No. 1 at 7.)

Under the "unlawful" prong of the UCL, "section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Where a plaintiff cannot state a claim under the "borrowed" law, they cannot state a UCL claim either, as such claims rise and fall together. *See Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1011 (N.D. Cal. 2016); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012).

"There is a split among California courts as to the correct test for the 'unfair' prong of the UCL." *Elgindy v. AGA Serv. Co.,* No. 4:20-cv-06304-JST, 2021 WL 1176535, at *10 (N.D. Cal. Mar. 29, 2021) (citing *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 612 (2014)). Nevertheless, a plaintiff alleging an unfair business practice must

> at minimum explain how the alleged unlawful business act or conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. The applicable test asks whether the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is

14

> not an injury the consumers themselves could reasonably have avoided.

*Maestas v. Wal-Mart Stores, Inc.*, No. 2:16-cv-02597-KJM-KJN, 2018 WL 1518762, at *2 (E.D. Cal. Mar. 28, 2018) (internal quotation marks and citations omitted).

In the pending motion to dismiss, defendant argues that because plaintiffs have failed to sufficiently allege a cognizable FDCPA claim, plaintiffs have likewise failed to sufficiently allege a cognizable UCL claim, which is predicated on their allegations that defendant violated the FDCPA. (Doc. No. 10 at 17–18.) The court agrees that because plaintiffs' have failed to state a cognizable FDCPA claim, which is the predicate claim for their UCL claim under the "unlawful" prong, they have also failed to state a cognizable "unlawful" business practice claim under the UCL. As for the "unfair" prong, plaintiffs have not alleged facts to show that defendant's conduct in this case constitutes an "unfair" business practice (i.e., how defendant acted immorally, unethically, oppressively, or unscrupulously). *See Bolanos v. Alter*, No. 3:11-cv-00934-MLH-BGS, 2011 WL 13356439, at *3 (S.D. Cal. Aug. 19, 2011) (dismissing a UCL claim where the plaintiffs did "not allege what conduct defendant engaged in that was unfair, and or how it was unfair under the UCL," and defendant instituting an unlawful detainer action against them was not an "unlawful" practice). Nor do plaintiffs assert in their opposition that there are additional facts that they could allege in an amended complaint to show that defendant's conduct is "unfair" under the applicable test referenced above.

Accordingly, the court will also grant defendant's motion to dismiss plaintiff's UCL claim.

**C.   Leave to Amend**

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so requires" and that rule is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Nevertheless, leave to amend need not be granted where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See Amerisource Bergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

In their opposition, plaintiffs did not respond to defendant's argument that leave to amend should be denied, and they did not request that the court grant them leave to amend their complaint if the court were to grant defendant's motion to dismiss. Because there was no "debt" and no "debt collection" attempt by defendant in the underlying unlawful detainer action, requisite threshold elements to an FDCPA claim, the court concludes that granting plaintiffs leave to amend their complaint would be futile. In turn, the same is true as to plaintiffs' UCL claim.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss plaintiff's complaint without leave to amend (Doc. 10) is granted. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**August 30, 2021**__              *Dale A. Drozd*
                                               UNITED STATES DISTRICT JUDGE